Taylor - Judge—
 
 —
 

 Delivered the opinion of the court,-The decision of this case depends upon the construction of the third clause of the will of Francis Moreland. On the part of the plaintiffs it is contended that the limitation to the brothers and sisters is so expressed, that it must take effect, if at all, at the death of Francis Moreland,, and that consequently it is within the limits prescribed by law tor the vesting of an executory devise. — On behalf of the defendants, it has been argued, that the limitation to, the brothers and sisters is void, as being to take effect after an indefinite failure of issue of Francis Moreland, to whom, likewise, the negroes are given by such words as, if applied ío real estate, would amount to an .estate-tail, which therefore transfers an absolute interest in chait Is, Upon the first argument of ibis case, the court inclined to the ter opinion,; but upon maturely considering the cases tpd, a majority of our brethren have been ied to think differently. I will state the grounds upon which their present opinion is formed: In doing which, it will not be necessary to notice particularly every case that has been read; because however proper and apposite they might be, according to the manner in which the argument has been conducted by the counsel, they are not necessary to be resorted to in the views which we have taken of the subject.
 

 Executory devises of chattels are a departure from the ancient common law, according to which, the gift of a chattel for any period of time, amounted to an absolute disposition of it, and any limitation over was void. The distinction between the use of a thing, and the thing itself, continued, as applied to chattels personal, even after it .was overruled as to chattels real; and whether an executory devise could be created of the former,-.,was questioned, after the decision of the Duke of Norfolk’s cáse had finally cs--
 
 *50
 
 fablished its competency with respect to the latter. Tlu'd appears from 1 P. Williams 1, and 2 Vern. 331.—Since the °f these decisions, it has not been doubted, that, future interests in the nature of remainders maybe created in chattels personal, by the means of trusts and executory devises.
 

 The convenient and beneficial manner in which provision could thus be made for families and children’s portions, induced the courts to countenance executory dévises ; but on the other hand it was foreseen that an unlimited indulgence of them might introduce all the mischiefs which it was the policy of the statute
 
 de donis
 
 to sanction, since there was no way of destroying entails created in this form. It was settled at a very early period of their adoption, that entails by executory devise, could not be barred by fine or recovery. if they consisted'of real estate, the devise could not be barred by fine, because the title of the devisee was independent of the immediate taker
 
 ;
 
 nor could the estate of the devisee be destroyed by recovery, because the recompense, which, in this fictitious mode of proceeding, is the ground of barring the issue in tail and those in remainder and reversion, doth not extend to an executory devise, Cro. Jac. 590. If they were of personal estate, they could not, from the nature of the property, be the
 
 subject of either Rue or
 
 recovery. Hence it became necessary to limit and confine, this mode of settlement, that entails so made, should not Iasi longer than the law’ permits where they commence by creating estates for life and estates-tail with remainders over. It is therefore in analogy to the rule which prevails at law in relation to strict entails, which cannot be protected from fine and recovery longer than the life of tenant for life and the coming of age of his first issue, that a principle is applied to executory devises, with regard to the time of their vesting. This must be a life or lives in being and twenty-one years after | to which áre added a few months for the case of a posthumous child. Every contingency therefore, which must happen, if at all. within that period of time, is
 
 *51
 
 sufficient to support a limitation over. But an executory devise cannot be limited on a failure of issue ot the person named, whenever it happens. It is however to be eii, that although a fine or recovery will not bar the entail a chattel on account of the nature of the property, the danger of perpetuity is nevertheless avoided by the operation of the principle, which declares the vesting of an interest, which would be an estate-tail, bars the issue and all subsequent jinptations.
 

 The rule therefore fixing the time within which an exe-cutory devise must take effect, is equally clear and well settled; but from the language in which wills are sometimes penned a difficulty has arige-n in most of the cases, to ascertain whether the rule is observed or transgressed. Rules of construction have therefore been resorted to, and have been employed in a great variety of cases for the purpose of effectuating the intention of the testator. A few of these w hich may be considered as undoubted law, I shall cite and adopt as the grounds of our opinion.
 

 1st. That such a construction ought to be put upon the words of a will as, upon a fair consideration of the whole context, it is evident the testator intended they should receive, unless some rule of law is thereby violated.
 

 2d, That where personal estate is limited after a dying
 
 without issue,
 
 those words do not necessarily import a general failure of issue, although the first devise may be of an express estate-tail. Nor in the case of an estate-tail by implication, do they necessarily signify a dying without issue living at the death of the first devisee. If however the construction entirely depend on those words, the limitation in .both cases is too remote : but in one case as well as the other, the words may he confined to a dying without issue then living, if there be any thing in the will from which such an intention can be inferred.
 

 3d. Tlse inclination of the court should be in favor of such
 
 *52
 
 a construction as will support the limitation over, if it can „ ■ ,,, , , , , , be
 
 done;
 
 and they should lay hold of. any opportunity of referring such words to the want of issue at the time of death. .
 

 It may be inferred from the phraseology of several clauses in 'this will, that the testator was apprised of the rule of law which renders limitations void, after an indefinite failure of issue; since he has by apt and significant terms confined the failure to the death of the first faker. This he has done in every instance where the first devise is to one son and the limitation over is to another. Upon the first, second and fourth clauses of the will, the limitations over must vest, if at all, at the end of a life, in being. The words are “ if my son should die without issue living at th' time of his death.” In every instance where the limitation over is to one person, and that person is a son, the failure of issue is most carefully tied up to the death of the first taker. In the third and fifth clauses, where sons are the first takers and the limitations over are to grand children, a diversity of phraseology is introduced. The testator however manifestly intended to make a substantial provision for his grand children in the event of his sons dying without leaving issue. The supposition that the clauses in their favor are inserted in the will, with a knowledge and belief that they áre núg.' tory and could have no legal operation, is wholly in-admisssible.
 
 (a)
 
 But it may be asked» as the testator knew
 
 *53
 
 pe necessity of restraining the failure of issue to the death of the first taker, and has in other instances used adequate terms for that purpose, why has he not been equally cau-iious in the clause under 'consideratidh ? — To my mind the answer is clear and satisfactory. When he gives property to one son and his issue, and afterwards to another, the chance was equal that the last might die before the first taker, ana if he died leaving issue in the life-time of the first taker, the testator was desirous that'the bequest should be so expressed, as to be transmissible to that issue, in the event of the subsequent death of the first taker without issue. Hence, to the limitation over he has annexed words of perpetuity, and to the first disposition, words of proper
 
 *54
 
 restrictive import. When however the limitation over is made in comprehensive.'terms, to several gi and-children* ware alive'at the making of the will it was p> be expected according tOjittie ordinary chances o!’ human life, that some of them would survive their brother
 
 ;
 
 that consequently it would be determined during the life time of some of them, whether the first taker died with or without issue | and as all the lives were in being, it seemed less.necessary
 
 to
 
 use the words
 
 H
 
 without issue living at bis death,” because the intention was, if he died wit bout issue in Hie life, time of any of his brothers and sisters. And it was of no importance that the failure of issue was made to depend ora several heirs $ for the cases seem to shew that any number of lives may betaken, provided they are all in bring when the will is made. From these observations I deduce the conclusion, that the testator believed when he wrote this clause that he had adopted language sufficiently expressive,' and of force equivalent to that which he had used in mak“ ing the bequests to his sons, but varied in order to correspond with the relative situation of his grand’children. To those who should be alive when his grand-son Francis might die without issue, he intended a personal benefit; and that some of them would survive him, he contemplated as a probable event. The case of Hughes
 
 vs.
 
 Sayer, 1 P Williams, 534, thougli not a direct authority in this case, resembles it with respect to the principle I now advert to There, one, having nephews A. and B. devises his personal estate to A. and B. and if either die without children, then to the survivor. The master of the rolls decided that the words “ dying without children” must be construed, living at the death of the party. That they could not signify, when there should be a failure of issue, because the limitation over was to the surviving devisee; and it was not probable that if either of the devisees should die leaving issue, the survivor should live so long as to see a failure of issue, which in notion of law was such a limitation as might endure forever; and therefore by reason of the limitation over in case of ei-
 
 *55
 
 iher of tlie devisees dying without children, then to the survivor, i be ‘esiator must have intended to mean, a dying without children living at the death of the paren*: consequently the devise was good. To the same effect is the case of Nichols
 
 vs.
 
 Skinner, Prec. in Chan. 528. Where a legacy was eiven •* to A. B. &c. and if any of them die without issue, his or lie, share to go over to the survivors or survivor the limitation over was supported on the ground that the testator intended a personal benefit to the legatee over, and therefore meant to confine tlie failure of issue to their lives. . he sixth clause in the will is the only one, where, before a limitation to grand-children, he confines the. failure of issue to' the death of the first taker. That however seems to have arisen from the peculiar nature of the disposition he was desirous of making to his son-in-law Francis Oliver : toe legacy is confined to the children he might leave by the testator’s daughter, and therefore he particularly confines it to such children of that description as he might leave at the time of his death. Had he designed that any issue of Francis -liver should enjoy the bequest, it is probable he would have contented himself with using the words « and in default of such issue,” as he uniformly does in the other clauses relative to grand-children.
 

 It is generally true that a limitation of personality after
 
 a dying without issue,
 
 is void, and if there are no other expressions to resort to for the construction of those words, the devise over cannot be supported. The intention of the testator must be regarded where there ss no express legal limitation ; and although the words import an estate-tail, yet if there be any circumstances from which it can be fairly inferred that such was not the intent of the testator, the devise over is sustainable. The language of this clause of the will would, if applied to real property, create an estate tail; not because it is a formal legal limitation of such an estate, hut because iherecould not be a default of the heirs of Francis Moreland, while his brothers and sisters were living 3 and the testator miist therefore have njeant lineal heirs.
 
 *56
 
 Cro. Jac. 415, Cowp. 234.—But there are other words it? this clause, which are to be brought into view, in order t© ^orm a jufit construction, and from them it will probably appear, that the testator meant to restrain the failure of issue to the lives then in being. These words are,
 
 “
 
 to be equal-Jy divided amongst his brothers and sisters then living.” The enquiry therefore is,.what did the testator mean by those expressions ? If he meant to devise the negroes oyer to the brothers .and sisters that might be living, when the default of lineal heirs might happen,, whenever that might be, it is clearly too remede. But if he meant the brothers and sisters living at the death of Francis Moreland without lineal heirs, then it is properly restrained, and the plaintiffs are entitled.
 
 1
 
 hat he designed the latter,.! infer, 1st. from the manner in which he has used the same expressions in the last clause of his will; 2mlly, from the meaning which has been put upon these words in several authorities.
 

 In the last clause of the will the testator gives “ all the rest and residue of his estate to be divided among his children then living.” It is evident that in this instance the testator has used the words as referring to the time of his own death. They will fiot admit of any other possible construction, nor is it necessary to seek for any other, for the operation of the will is precisely, the same with or without these words. They were probably inserted from abundant caution; but being used in an unambiguous sense and in reference to the event of death, in this clause, the conclusion is entirely fair, obvious and natural, that, he meant to use them in reference to the same event, in the third clause of his will. Such a meaning is the more strongly forced upon us, when we consider that it is rendering the construction subservient to the intention.
 

 2dly. The construction which the expressions in this will or similar ones have received, seems to have arisen from a principle which has now become a fixed axiom in a court of chancery, and is thus stated in 2d Fearne, 186. "That
 
 *57
 
 with respect to oxerutocy devises of ¡ rms for years or.other personal estates, that court lias very much inclined to lay liold of any words in tlie will, to tie up the generality of expression of “ dying without issue,” and confine it to dy„ ing without issue
 
 living
 
 at the finie of the person’s decease.” Target
 
 vs.
 
 Gaunt, 1 P. Wms. 432, is an instance of this mode of construction ; and indeed the cases are so numerous that I shall barely referió Fletcher’s case, i
 
 Eq.
 
 Abr. 193, where there was another event besides that of death, to which the words “ then living” might have related, an.& to which they referred in strict grammatical construction
 
 §
 
 yet for the sake of supporting the li nitation over, they werp interpreted a dying without issue living at the time. Without taking up more time upon this part of the case, I will only
 
 add,
 
 that it appears to a majority of our brethren, the intention of the testator, to be collected from the whole.will, was that the brothers and sisters of Francis, who should bé alive at the time of his death without actually leaving issue, should be entitled, and that consequently the plaintiffs are entitled to the judgment of the court.
 

 Hall
 
 - Judge
 

 Brothers and sisters
 
 then
 
 living, means brothers and sisters who shall come into being, as' well as those already in being where they tire to take on a future event: if to take a preseiit incest, they mean brothers and sisters in being — Cowp. 312. Consequently, as the brothers and sisters here spoken of were to take on a future event, should-it happen, ali those born after making the will, who shall be living when the event occurs have an equal claim with those in being when the will, was made. . As to the ulterior limitation, to be good it must be such as must take effect if at all in a life in being and 21 years , after. Now here suppose Francis died, leav. eg a son, and then Thomas had issue, another brother or sister of Francis ,and twenty-two years after the death of Francis his son should die without issue under the terms used in the limitation now under consideration, the issue of Thomas, born after the lifetime of Francis would take, although the event upon which
 
 *58
 
 the ultimate limitation depended, did'not take place until 32 }’eai’s after the life of Francis or it might have keen 40 or years after; for the isfeuc born after the death oí Francis might have lived 50 or 6(1 hr even 80, and the son of Fi nn-cis or the son oí that son might have then died without issue 60 or 80 years after the death of Francis. A bn..her or sister of Francis might be then living, and might s y the estate is mine, for I am a brother living at the period wi.<m Francis is dead without issue. Whenever the issu- of Francis fails he is in law said to he dead without issue, ’i i-?s then is not such a limitation over as must take efSV' t, if st all, within a life in being and at years after: it ¿nay lake effect if allowed to be a valid lim tation 50 or
 
 60
 
 ycats after that period; and I am therefore of opinion it is void in law. The words «then living” used in the, other parts of the will, tie up the event to the death of the legatee foi life, in precise terms; which proves that the writer of the will well knew how to confine the limitation over to that event when he wished to do so — and proves to my mind that lie did not mean it in the present instance. — He meant, as the words import, that the portion of Francis should go to all the cíhl-'dren of Thomas, born and to be bofn, who should be living-when the line of Francis failed. — He hail no reason tor pre-fc- ring the children of Thomas who were born' to those who were pot so: he has not intended such preference.
 

 (a)
 

 .The clauses of the will refereed to by the court were in the fol' lowing words:—
 

 1. “
 
 l
 
 give and bequeath to my son Thomas and the heirs of his body lawfully begotten, the following negro slaves, to-wit: — Jenny Sue, &c; and their increase, but if my said son Thomas should die without issue living at the time of his death, then I give the said negroes and their increase to my son F"ancis Moreland and his heirs for ever.
 

 2- I give to my son Thomas Moreland and the heirs of his body law-fullv begotten, my plantation where I now live, containing by .estimation two hundred acres, and n default of such heirs living at the time of his death, I give and devise the same to my son Francis and his heirs for ever.
 

 3.1 lend to my son Thomas during his natural life one negro girl
 
 *53
 
 named Phebe, and after his decease, I give the said negro and her increase to mv grand-son Francis Moreland, son of the said Thomas, to him and h:9 heirs forever ; and in default of such issue, !he said negro 'and her increase to be equally divided amongst his brothers and sisters then living.
 

 4. I give and bequeath to my son Francis Moreland and his heirs the following slaves to-wit : — Jude. Patt, See. and their increase : But if toy said son Francis should die without issue living at the time of his death, then I give the said negroes to my son Thomas Moreland and his heirs forever.
 

 5. I lend to my son Francis during his natural life, one yellow girl named Patt, and after his decease, I give the said negro and her increase to my grand-son John, son of the said Francis, to him and tvs heirs forever, and in default of such issue, the said negro to be equally divided among his brothers and sisters:
 

 6 I g:ve and bequeath to my son-in law James Oliver and his heirs, the following negroes, to-wit: — Patt, Hannah. &c. and their
 
 increase;
 
 but if my said son-in-law James Oliver should die without issue by my daughter Anne Oliver, living at the time of his death, then T give the said negroes to the children of my two sons Thomas and Francis More-land to be equally divided.
 

 7.
 
 1 lend to my daughter Anne Oliver during her natural life one negro girl named Dinah, and after her decease, I give the said negro girl and tier increase to my grand-daughter Mary House, to her and her heir ’forever.
 

 8. I Iend to mv daughter Anne Oliver, during her natural life one ne-gr’ó boy named Dick, and after her decease I give the said negro boy to her son Francis Oliver and the heirs of his body lawfully begotton, and in default of such issue, the said negro to be appraised ana the money equally divided amongst his brothers and sisters.-
 

 '9.
 
 I give all the rest and residue of my estate to be equally divided among my children then living.-